Good morning. May it please the court, I would like to reserve three minutes of my rebuttal time today. There are three main issues that we've raised in the brief, but I'd like to focus the argument today, because of the time constraints, on the denial of the right to counsel of choice. And on that issue, I think I'd like to focus on three aspects of the trial court's ruling that we believe violated Mr. Matsa's right to counsel of choice. But to start off with the framework, the Supreme Court in the United States v. Wheat held that a criminal defendant has the right to counsel of choice, and there is a presumption that the counsel of choice that the defendant has chosen and has retained is going to be the one that's going to represent them in trial. More recently, in United States v. Gonzales-Lopez, the Supreme Court ruled that that is a fundamental right, that when it is deprived improperly is a structural error that affects the entire trial. I believe that that right was violated here when the trial court denied Mr. Matsa his ability to be represented by his long-time attorney, Thomas Tyak, who had represented him successfully in a number of related proceedings over the course of approximately seven years before this trial started. The problem you've got is the reason was the defendant was going to rely on a vice counsel as a defense in the case and would if so require a lawyer to testify, and there is no constitutional problem with denying the counsel if the counsel intends to become a witness in the case, right? Well, there is no constitutional problem. Although Wheat didn't go that far, it talked about conflicts, this Court's decision in Swofford, authored by Your Honor — Is that the basic issue? Well, yes, but I think that the way that that issue played out here was not the way that it should have played out here, and here's why. So in a case where you're talking about a real lawyer as witness case, you have a lawyer in, for example, a tax case who has created the tax shelter and is actually a witness to something. Here Mr. Tyak was not a witness to anything. Mr. Tyak drafted a letter to DOJ pre-indictment, as many, many counsel do, and it laid out what the defense position was in the case. And so he was no more a witness than any lawyer who writes a lawyer to the Department of Justice and just lays out what was ultimately Mr. Matz's defense at trial, which was that Mr. Matz's defense at trial was that, in part, Mr. Pappas was now — his new story, his recanted story was that was not true. That is, his claim that he was not the custodian of records and not the owner of the George Pappas-Aristotle Matz law firm was not true. That was Mr. Matz's defense at trial, and there was really no — that was kind of where the problem started here was that this was not the typical lawyer-as-witness case. In a real lawyer-as-witness case like Swofford, where the lawyer had actually — the lawyer's advice was in question, because you had someone who was charged with — he made iodine, and he made it in such quantities apparently that he got in trouble under the drug laws, and he had gone to a lawyer to talk about his use of iodine, and that lawyer's testimony was in question. But here we have just the typical pre-indictment representation from a defense counsel to DOJ. You might be right if this was only a tax case, but this has this additional element of the obstruction charge. Well, it does have the additional element of the obstruction charge. So let's assume that his testimony wasn't going to be relevant or necessary in connection with the underlying tax problem. Why would that be true with respect to the obstruction charge? Well, here, even the letter itself was such an extraordinarily minor part of the obstruction charge. To be sure, the government did include it as one of 13 overt acts in the indictment as one thing that had been done. But the first time he got up to talk about this, Mr. Tyak made clear to the court, there will be no dispute that I sent this letter on Mr. Matz's behalf, and there will be no dispute that this is our defense. That is, the jury will only be asked to decide whether or not Mr. Pappas was, in fact, the custodian or whether Mr. Matz was. So there's no advice here that's in question at all. And so with respect to this... If that's true, why wouldn't he agree to waive an advice of counsel defense? Once being specifically put to the task, as I understand it, and refusing to do that, that certainly would raise a lot of red flags with a judge. Well, I don't think that's this record. So in an August 2010 hearing, his lawyer, Mr. Tyak, said unequivocally that he would waive the defense as to that letter. And that was the letter that the prosecutor had mentioned in the... But his client wouldn't sign it. Well, what happened was, his client wouldn't sign a waiver that said he waived all advice of counsel defense as to all time, as to all counts in the indictment, when discovery hadn't even gotten started. And so the judge had before him a discrete issue. Would Mr. Matz waive advice of counsel as to this particular letter? And his lawyer said yes. And then the prosecutor said, well, but hold on here. I want him to have independent counsel because I want what he described as a big waiver. And then that's, in fact, what the prosecutor wound up submitting to the defense. And when that process broke down, because the defense, Mr. Tyak said in the August 2010 hearing, we're not going to agree to a big waiver. We're going to agree to waive advice of counsel with respect to this letter because it's a non-issue. And this was the letter... There was, at that, the upshot of all this, though, at the end of the day, is that there was no way in which the district court could have determined whether Tyak was ultimately going to be a witness or not. Well, I mean, that's the situation with which the district court was faced. And Mr. Matz was unwilling to do anything to clarify and facilitate the district court's determination. And so the district court really thought, took the only alternative it had at that point, which was to disqualify Mr. Tyak because he was not going to be a witness, because there's a possibility he'd be a witness. Well, I think if that were the record, that outcome would be correct. But I don't think that is... But why isn't? What's different about this record from what I just said? Well, in the August 2010 hearing, the judge, at least tentatively, decided that Mr. Matz's counsel, Mr. Tyak, could stay on the case. But the only thing left to do was work out a waiver of advice of counsel. And the judge left it to the parties to work that out. The case is very broad, and it's in the record. So how does this make a difference in the district court's inability to determine that Mr. Tyak would not be a witness? Well, the district court, I think, in terms of... I mean, a district court is entitled to say, well, tentatively, I'm inclined to do X and later do Y. And furthermore, here, what the district court had hoped could be resolved was not, in fact, resolved. Well, in my view, the district court didn't do two things. The first is that the district court didn't actually run the waiver process to ground. He employed an independent counsel, never talked to independent counsel about Mr. Matz's position. The only evidence we have of what Mr. Matz's position was, was the son of Tom Tyak making kind of an ambiguous representation in a telephone conference about what he thought the independent counsel and Mr. Matz had resolved. So the judge never ran that to ground. And in the later pleadings, it becomes clear that Mr. Matz is still taking the position that the waiver was too broad. Well, now, what should the district court have done with respect to the independent counsel? You think the district court should have inserted itself into the relationship between Mr. Matz and someone who was appointed to advise him with respect to this issue? Well, he should have gotten Mr. Matz's position on the advice of counsel defense from independent counsel and not from, as the prosecutor described, the lawyer who had a conflict with respect to independent counsel. And clearly, from the record, didn't seem to know much about what Mr. Matz's precise position on it was. And so he should have gotten to the bottom of that. He should have inserted himself into the stipulation process. And because it seems clear from the argument- What role does the district court have in negotiating or arriving at stipulations on behalf of parties? Well, it's fulfilling the presumption that counsel of choice ought to be the choice in the case. And so that's one thing the district court didn't do. I think the second thing that the district court didn't do, and I think this is a bigger problem, is that the Supreme Court in Wheat said that the district court has a responsibility to ensure that the government is not trying to manufacture a conflict in order to drive longtime counsel, as here, and longtime successful counsel off the case. And that analysis, and the Supreme Court said that the district court must do it, is not evident anywhere. And here, I think you have about as strong a case as you could get. From the first day of arraignment, the prosecutor apparently approached both Mr. Tyak and his son about the need to withdraw from the case because of what he called a conflict, and he points to one paragraph in a 22-count indictment as this means you're off the case. He raised it, the first chance that he had, in a case where the trial judge had found that the prosecutor had made threats to counsel even before counsel started the representation, at the pre-indictment stage. And so you draw that all the way through. It was clear that this prosecutor was very intent on getting Mr. Tyak off the case, and the judge didn't take that. You know, that might be construed differently by a different observer as a very commendable candor on the front end as to the prosecutor's intentions. I mean, likely, if the prosecutor hadn't made his intentions known from the get-go, you could be characterizing it as the prosecutor having pounced upon Mr. Tyak unknowingly at some later point in the proceedings. When he didn't have a lawyer. Isn't it a case where frankness and having the case run smoothly would countenance the prosecutor to let the defendant know that the prosecutor was concerned about this problem? Because if all of a sudden it's raised when he doesn't have a lawyer, it makes it much more difficult. Well, I certainly think there are cases, and certainly cases where real lawyers witness cases, not lawyers sent a letter to the Department of Justice advocating the defense theory and that makes the lawyer a witness in the case, where the prosecutors raising the issue early would be commendable and would be something that the district court and the defendant would want. But in a case like this one where he raised it over and over again, and then you have this problem with the stipulation, where the stipulation that the prosecutor wanted was a waiver of advice of counsel defense writ broad with a defendant who had consulted a lawyer outside of the TYAC firm. If I'm understanding the facts here that are pertinent to this letter, the letter made a representation which in fact turned out to be false because of the records that were found in Mr. Matz's office and the contrary to the representation in the letter. So it would be natural for the prosecutor to think that Mr. TYAC was a lawyer and that might or might not have some factual information about that and it's also would be natural to think that perhaps Mr. Matz would wish to look elsewhere to place blame for the discrepancy between the representation and the records found in his office. Well, I have a couple of quibbles with that. The first is that the records being found in Mr. Matz's office still didn't resolve the point of whether or not the letter was false because the position that was taken in the letter was that Mr. Pappas owned the law office and so he was the actual custodian of records and so Mr. Pappas had said that, precisely that to the Ohio Bar and on several other occasions. Probably the government would argue that the discovery of the documents did in fact permit the inference of falsity, but whether that is the case or not, if there are no other questions at this time, I think your time is up and you'll have your rebuttal. May it please the court, Alyssa Hart-Mahan for the United States. As the court is no doubt aware, this was not a typical or standard tax case. There was a lengthy effort by the defendant to conceal his income and assets from the IRS, but there was also extensive and complex and concerted obstruction of justice here. With regard to the counsel issue, my colleague ignores some important evidence in the record and I would specifically point the court to the September 21st, 2010 teleconference. Again this was an issue, the issue about the potential conflict of Mr. Tyak was an issue that was extensively briefed below. The district court had a hearing in August where they discussed a potential waiver of the advice of counsel defense. Again there was supplemental briefing and then the court had a teleconference when the negotiations over the stipulation reached an impasse. And the court specifically inquired of defense counsel during that teleconference. What I want to be clear on, we have a substantive dispute here. It's not a language issue. Would that be accurate on my part? And so the court is specifically saying, is the problem you have here with the wording of the stipulation, is it too broad, is the issue with the wording, do we need to try to edit this, can we try to make this work? Because the district court had indicated earlier that it was inclined to allow Mr. Tyak to remain as counsel if they could work out a stipulation, if the defendant would agree to waive calling Mr. Tyak as a witness at trial. And defense counsel clearly represented to the court, it's a substantive issue with respect to waiving the advice of counsel defense, it's a substantive issue. It's page five of that transcript. You know, why isn't the best way to handle a situation of this kind where you don't know whether the lawyer is going to need to testify or not, it depends on how the trial proceeds. By advising the defendant, you need to have another lawyer here as well as Mr. Tyak. If you want Mr. Tyak to represent you, then he's going to be excused if it appears or if he does need to take the stand, and you need to have another lawyer here to represent you as well. Why isn't that a better alternative way of handling this than trying to guess on the front end that the lawyer is going to have to testify? In this case, he didn't have to testify. I'm sorry, he did not testify, right? He did testify, Your Honor. What did he testify to? He testified on direct examination that he had advised the defendant not to file a report of a foreign bank account. He discussed the letter that was the subject of the obstruction of justice counts and how those representations were based on his review of filings. On cross-examination, however, Mr. Tyak's testimony differed from the defense in this case. Mr. Tyak testified that the defendant had not fully disclosed information to him that would have been relevant to the advice he gave to counsel. So if you review Mr. Tyak's actual trial testimony, again, here, because he was called as a witness, we don't have to speculate about what he would have testified to. His testimony is in the record, and it demonstrates that there was an actual conflict between what Mr. Tyak testified to and the defense in this case. Specifically, with regard to the September 20th letter, he testified, the letter represented that one of the entities identified in the subpoena that Mr. Massa had told him that that entity was defunct, was no longer in existence, there were no documents responsive to the subpoena related to that entity. On cross-examination, the government showed Mr. Tyak tax returns for that supposedly defunct entity that would have been responsive to the subpoena that were discovered in the office over which Mr. Massa had sole control. Mr. Tyak admitted on cross-examination that those documents were responsive to the subpoena, that he was not aware of their existence, that he never told Mr. Massa not to turn those documents over in response to the grand jury subpoena. In response to Your Honor's question about alternatives, I think the district court here was concerned with maintaining the integrity of the proceedings. It's well established in this court's case law, the model rules and the Ohio rules of professional responsibility, that it's simply not tenable to have trial counsel serving as a fact witness. While the notion of having standby counsel or having another attorney available might work in some instances, it depends on when it becomes clear that the lawyer is going to be a witness in the case. I would submit that it would affect the integrity of the proceedings to have trial counsel representing defendant for the first half of the trial. And then midway through trial, the defendant say, well, I've decided that I want to assert an advice of counsel defense, I'm going to call my lawyer as a witness and have the other lawyer take over. Again, all of the issues that the model rules and this court had recognized during the play. Well, what would be the reason why that would be improper? What would be both the appearance and the reality of why that alternative is improper? Again, with the example that I just suggested, if you have, and the district court discussed this at some length in his order, granting the motion to disqualify, that when you have an attorney that trial counsel is serving as a witness, it affects the integrity of the proceedings. It could cause the jury to think that perhaps the lawyer was giving bad advice, that the jury should have heard his testimony more because of his role as an advocate before the court. Again, it's well established that that's simply not acceptable and the district court is granted broad discretion, wide latitude to make pretrial determinations about potential conflicts. Another alternative, I mean, another thing that the district court might have done, though, in an appropriate case, in the exercise of its discretion, would have been to advise Mr. Matza of the desirability of retaining other counsel and if he, telling him that if he did retain other counsel, he was willing to wait until a later point in the proceedings to determine the question of disqualification of Mr. Tyak. Would that, I mean, that could have happened. That could have happened. I mean, obviously there were reasons the district court chose not to do that here, but that would have been a way of preserving Mr. Tyak's role in the case, at least for a time. Yes, Your Honor, but the district court, again, in its order made clear that its disqualification of Mr. Tyak would not prevent Mr. Tyak from assisting the defense, from imparting all of his knowledge from his prior representation of Mr. Matza to new defense counsel. And again, because this was a very document-intensive... The problem is just his sitting and appearing in the case as counsel for the defendant, if after a while he does take the stand, there's just something wrong with the appearance of that. I still don't get why. I mean, we've got a rule here that there is a pretty clear, absolute right to counsel of choice as a constitutional matter. Yes, Your Honor. And then we've got a non-constitutional rule of professional responsibility concerning counsel testifying. And then we've got a standard of review that is, did the district court act arbitrarily? It's kind of a mess. Yeah, I would note for the court that the Supreme Court's decision in Gonzalez-Lopez, which was its most recent discussion of the right to counsel of choice, at the very end of the majority opinion, the final paragraph, discusses the court's previous decision in Wheat and states that the defendant's right to counsel of choice does not override the ethical rules, does not give the defendant a right to conflicted counsel, and again, affirmed its holding in Wheat. And in Wheat, and also this court's decision in Swafford, made clear that the district court is in a tough position here. He has to make a pretrial ruling about a potential conflict that could affect the integrity of the proceedings, that could result in an actual conflict between the defendant and his counsel, and that the standard of review is a deferential one, the district court has wide latitude because of the difficulty of making these determinations pretrial. I would also note that in Wheat and in Swafford, this court and the Supreme Court recognized the whipsaw effect, essentially, that the government and the court ignore potential conflicts of interest at their peril because it opens the proceeding later to a claim of ineffective assistance of counsel. So there's danger on either side, and that is the reason for the deferential standard of review. It seems to me that in this case, the appellant's task is made a little bit harder by the fact that the attorney did, in fact, testify. So I can see that because this waiver of the advice of counsel defense didn't take place that he might have, at that point, said, well, the guy's been disqualified, he is a witness, I'm going to call him. But having said all that, has the defendant ever said that, in fact, he would not have called this witness as he did had he been permitted to stay on as counsel? I'm not aware of any representation to that effect. I have not seen it in the record. And I would note, again, that... I'm just trying to figure out, if he hasn't ever said that he wouldn't have called the guy, we now know that he did, it seems to me the U.S. attorney's prediction that there would be a serious conflict here because he was going to be a witness came to pass. So it's kind of hard to figure out how you undo that. I would note for the court, as well, that during the pretrial, all of the pretrial litigation regarding the potential conflict and the disqualification of counsel, the parties were focused on the September 20, 2006 letter that responded to the grand jury subpoena. And while Mr. Tayack did discuss that letter in his testimony, the bulk of his testimony was actually providing, on direct examination, providing an advice of counsel defense for an unrelated count in the indictment, which was the failure to file the report of a foreign bank account. And Mr. Tayack testified that the defendant had told him that he had sent some money to the Netherlands, and he advised the defendant that he did not think that the defendant needed to disclose that to the IRS or file the report with the Department of Treasury. In his motion below, in his post-trial motion for a judgment of acquittal, defendant argued that that testimony, that Tayack's testimony regarding the foreign bank account advice, was a complete defense to that count in the indictment. Now, again, that was not on anybody's radar, that was not on the government's radar or the court's radar during the pretrial hearing, but I would suggest that it's somewhat disingenuous to argue below that his trial counsel, you know, his previous trial counsel's testimony constituted a complete defense to one of the counts in the indictment, and then to say, well, he wasn't a necessary fact witness. It also illustrates the problem that trial judges have of trying to figure out what the out a defense before you actually, the government completed its proofs and the defense had its chance to go forward. And I would also note that the district court rejected the argument that that testimony was a complete defense to the foreign bank account because of the damaging admissions that Mr. Tayack made during cross-examination, that the defendant had not told him that the account was open for several months, that he was a signatory on the account, and that the funds actually earned money as a result of the change in the exchange rate. It's unusual to have a constitutional rule that a defendant is entitled to counsel of choice and then have a standard, a review that basically says whatever the trial judge decides about this is going to be upheld if it's not completely arbitrary, you know? I mean, you've got a strict rule constitutionally that you're trying to protect the defendant by letting the defendant have counsel of choice and then a principle that whatever the trial judge does is going to be upheld. Well, yes, Your Honor, but again, I think that that final paragraph in the majority opinion in Gonzalez-Lopez sort of makes clear that because you do have, you know, a defendant has a right to counsel of choice but does not have a right to have somebody who's not a member of the bar represent him, for instance, does not have a right to demand that conflicted counsel represent him. And again, I think because of the difficulty of the pretrial determination, that accounts for the deferential standard of review. I would note that this Court's decision in United States v. Swofford, which was a 2008 case, so it was decided two years after the Supreme Court's decision in Gonzalez-Lopez, this Court upheld a district court's disqualification of counsel when the defendant had agreed to presenting the advice of counsel defense. And when the attorney who he claims to have relied upon was a member of the same firm as his trial counsel, it wasn't even the same attorney, and I would suggest that the facts of this case offer a much stronger basis for affirming the district court's disqualification order because of the explicit refusal to waive the advice. What is the situation if it's the same law firm that you switch to another lawyer? That's okay? No, Your Honor. Our defendant conceded below that the disqualification affected all of the lawyers in the firm. If the Court has no further questions, we ask the Court to affirm the district court's judgment in this case. All right, Mr. O'Toole. You know, Mr. O'Toole, it strikes me, I think based on something Judge McKeague said, that client wanted to employ the defense that he ultimately employed, at some point he would have had to tell the Court about that, and we would have ended up exactly where we were, where we are today. I mean, the same result. I mean, there was no way, given your client's choice of a defense, that you were going to end up with Mr. Tyak as counsel for the defendant at trial. I don't think that's right, Your Honor. I do think that the choice that Mr. Matzah had at trial was very different than the choice that he had before trial. So it's the government and the district court's fault he made the choice he did? Not their fault, but once his lawyer was gone, the lawyer corroborated Mr. Matzah's defense. I mean, first of all, to talk about a conflict is just not so here. There's no conflict. The government unequivocally said in August 2010, we're not calling Mr. Tyak. They knew that Mr. Tyak was, if anything, a defense witness. Now I don't think he was a defense witness to much, but he was a defense witness. So once Tyak's out of the case, once Matzah had... Well, at the end of the day, the government did get something out of him, not relating to the, apparently, to the count that was the subject of the advice of counsel defense, but with respect to obstruction, the government did obtain some favorable information for Mr. Tyak, right? On balance, I think a fair reading of his testimony is very defense friendly, which is why the defense called him. It wasn't perfect because the government scored a couple of points on cross, as they will with any witness. Well, I agree that once Tyak's been disqualified, then there's no reason why you can't call him. But is it not correct analytically to say that you do have to be able to come up with some sort of justification for why you wouldn't have called him had he stayed in? And I don't see that you even say that. Well, I thought we did, and if we didn't, I'll say it now. I mean, the justification is... So you had what you considered to be an absolute defense to one of the counts, not the count that was even talked about, and he would have foregone that had Tyak stayed in as lawyer. That's what you want us to believe. Well, first of all, it's one count in a 22 count indictment. It is a minor count in the 22 count indictment, and it's not, you know, certainly you can argue that it creates an absolute defense if a jury believes that the witness... But you started out saying this is a structural error and the harmless error doesn't apply, so saying, oh, never mind, it's only one out of 22, I mean, that's not how we look at it, is it? No, but what I'm... Certainly not. But what I'm saying is that once the lawyer is gone from the case, then there's no harm to calling Mr. Tyak as a witness because the lawyer is gone. I agree, but am I not right that in that analysis, though, you would have... You still have to be able to claim, hopefully with some justification, that you would not have presented what was presented as an absolute defense to one of the counts through the Tyak testimony. It would have foregone that. Never even mentioned it up to that point, but you would have foregone it. I think that's fair to say. I mean, I think that had Mr. Matz had been put to the test... Okay, how do we know that from the record? Is that just you telling us that now, or is there something that's been said previously? I mean, was... It's very hard to recreate. I mean, and this is why the Supreme Court said in Wheat that you have to do this prospectively. It's very hard to recreate what would have happened had the judge left Mr... Your argument in your briefs was not... I mean, Judge McKeague has just forced you to take a position that you had not previously taken. Would that be correct? I think that's fair, but I think it's that nobody has asked before this what his position... To recreate back a year before and think, okay, if I had had Tyak, the lawyer who had won cases for me over the years, who'd been my longtime counsel of choice, who is my understanding is one of the few lawyers who had beaten the same trial prosecutor in a jury trial in this jurisdiction. If my choice is I get rid of him in order to get, obviously not airtight, but a partial defense to one count in a 22 count indictment, if that's the choice that he's putting to, I think most defendants, and I think it's fair to say, Mr. Matzo would have made the choice to keep his lawyer and try and win the case that way as opposed to having lawyer as witness on one of the 22 counts. Well maybe, but that goes back to then the question of it's this arbitrary or without adequate reason standard that we apply. So it's just one factor in the mix. At least you'd agree with that, wouldn't you? Right. Right. And I think this was a factor that really wasn't even considered because I think part of the problem here is- Well, it couldn't have been considered at the time. It hadn't happened yet. Right. And I think, well, and part of the problem was this was done so early. And I think this was mentioned in the September 21st telephone conference. This was, this issue was flagged so early that it wasn't clear, the defense hadn't even gotten to discovery yet. And so they didn't know what issues were going to arise at the later trial. Nobody was thinking that Tyak would even potentially be a witness on this other count. It was all only talked about the letter. And with respect to the letter, there is no way I can tell you unequivocally that Mr. Matzo would not have called Mr. Tyak to talk about that letter at trial because there was no point. The letter was his defense and Mr. Tyak really didn't add anything to that. And that's what was discussed at the time. Once you got to trial with more information, would Mr. Matzo have made a different choice? I think that he would have, but again, I think we're just speculating about it. And at the last point- Fair enough. What I wanted to say was I do agree with you, Judge McKee and Judge Merritt, and I think Judge Gibbons, you also phrased this as well. The standard of review in one of these cases seems very odd, where you have an absolute constitutional right that the Supreme Court has reaffirmed twice, but then you have this arbitrary and capricious, almost APA-like review. I didn't say it was odd. In fact, I think this, I think you have to view this kind of case against the whole spectrum of cases in which the district court has to make decisions about counsel. I mean, you view it in context. I mean, an indigent defendant wants to fire attorney after attorney after attorney. The district court has substantial discretion at some point to say no. Indigent defendant doesn't get to select his own lawyer from the panel. You know, there's just all kinds of, it's in the whole context of these decisions that trial judges make about counsel for a defendant when the defendant has a different idea about what the representation ought to be. Well, I think there's potential for abuse on both sides, and I think the judge didn't do his job by not taking into account that the other side might want this guy's long-time counsel of choice off the case. But lest there be any misunderstanding, it's probably more accurate to say there's an absolute right to counsel, but there's not an absolute right to counsel of your choice. There obviously are limitations set forth in the very cases that you cite. Oh, absolutely, Your Honor. But I do think that the breadth of the limitation exceeds all. So the fact that the right to counsel of your choice is not absolute doesn't make the standard that we apply that odd. Maybe odd, but not that odd. There's more leeway than most review of the denial or the alleged denial of constitutional rights. Fair enough. We've moved on to the philosophical. I think we have. We appreciate the argument that both of you have given, and we'll consider the case carefully. Thank you, Your Honor.